```
               UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF TEXAS
                   ABILENE DIVISION


UNITED STATES OF AMERICA,        )
                                 )
                 Plaintiff,      )
                                 )
    VS.                          ) No. 1:23-CR-00020-H-BU-1
                                 )
TERRELL CHARLES FRYAR,           )
                                 )
                 Defendant.      )
_____ )
```

```
       ELECTRONICALLY-RECORDED REARRAIGNMENT HEARING
          BEFORE THE HONORABLE JOHN R. PARKER
             UNITED STATES MAGISTRATE JUDGE
                   SEPTEMBER 28, 2023
                     ABILENE, TEXAS
```

FOR THE PLAINTIFF:

    MATT L. TUSING
    UNITED STATES ATTORNEY'S OFFICE
    500 Chestnut Street, Suite 601
    Abilene, TX  79602
    (325) 271-6700


FOR THE DEFENDANT:

    MARK A. HOAK
    LAW OFFICE OF MARK A. HOAK
    1307-b West Abrams Street, Suite 211
    Arlington, TX  76013
    (817) 740-8900


    Proceedings recorded electronically; transcript produced by computer-aided transcription.
_____

```
       DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
          Federal Official Court Reporter
          1100 Commerce Street, 15th Floor
                 Dallas, TX  75242
                   (214) 753-2325
```

1          (Proceedings commenced at 10:45 AM.)

2          THE COURT:  The Court now calls Case No. 1:23-CR-020-1,

3  *United States of America versus Terrell Charles Fryar.*

4          MR. TUSING:  Matt Tusing for the United States.  Ready

5  to proceed, Your Honor.

6          THE COURT:  Thank you.

7          MR. HOAK:  Mark Hoak for the Defendant, Your Honor.

8          THE COURT:  Thank you, counsel.

9          And, Mr. Fryar, as you know, we're here for your

10  rearraignment or guilty plea.  So there's a little procedural

11  wrinkle.  I hate to call it that because it's an important issue,

12  but just to -- you know, you'll understand this as we go through

13  it, and your attorney's probably already explained it to you.

14          You were originally charged by Indictment by a

15  Grand Jury and now the Government has superseded that Indictment

16  with an Information.  An Information is a notice of a federal

17  charge filed by the United States Attorney.  And you have signed

18  a waiver of your right to be indicted, so I know you've talked

19  about this with your lawyer, but I need to make a record of this

20  as we go forward.

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  So why don't we do this:  You're going to

23  need to be under oath during this hearing, so please stand now

24  and let me do that and then we'll continue.

25          To the extent you can, raise your right hand.

1     Do you solemnly swear or affirm under penalty of

2 perjury that the testimony you'll give today before this Court is

3 the truth, the whole truth, and nothing but the truth?

4     THE DEFENDANT:  Yes, sir.

5     THE COURT:  Thank you, sir.  Please be seated.

6       EXAMINATION BY THE COURT:

7 Q.   So when I first saw you on the Indictment, I explained to

8 you your -- obviously, you have counsel, your right to counsel,

9 your right to silence, and all your rights associated with being

10 charged with a federal crime.

11    Do you understand that?

12 A.   Yes, sir.

13 Q.   And you understand you continue to have those rights in

14 connection with this charge in the Superseding Information even

15 though it's not handed down by a Grand Jury.

16    Do you understand that?

17 A.   Yes, sir.

18 Q.   All right.  So you have that inclusive right to not make any

19 statement about any charges against you, including the one in the

20 Superseding Information.

21    Do you understand that?

22 A.   Yes, sir.

23 Q.   All right.  So you presumably have received a copy of the

24 Superseding Information.  Is that correct?

25 A.   Yes, sir.

1   Q.   All right.

2          THE COURT:  And, Mr. Tusing, would you please read the

3   charge?

4          MR. TUSING:  Your Honor, would you like me to read the

5   full Information?

6          THE COURT:  It's a single count, right?

7          MR. TUSING:  Yes, Your Honor.

8          THE COURT:  Just -- Do you want him to read the entire

9   charge or just a summary?

10          MR. HOAK:  We'll waive the reading.

11          THE COURT:  Just a summary.  Thank you.

12          MR. TUSING:  Yes, Your Honor.

13          There's a single count in the Superseding Information.

14   It alleges Possession with Intent to Distribute Methamphetamine,

15   meaning that you knowingly possessed a controlled substance which

16   was, in fact, methamphetamine, and that when you possessed it,

17   you possessed it with an intent to distribute it.  It's a simple

18   possession-with-intent-to-distribute count.

19          THE DEFENDANT:  Yes, sir.

20   Q    (By The Court) And, again, this is your first appearance in

21   federal court on that charge.

22   A.   Yes, sir.

23   Q.   That's why we're going through this.  So do you understand

24   the new charge?

25   A.   Absolutely, yes, sir.

```
1   Q.   All right.

2           THE COURT:  And the maximum penalties the Court can

3   impose for someone convicted of that charge?

4           MR. TUSING:  Includes:

5           A term of imprisonment of no more than 20 years;

6           A fine not to exceed one million dollars or both;

7           A term of supervised release of not less than three

8   years and up to life;

9           Costs of incarceration and supervision;

10          Forfeiture of property;

11          Restitution to victims or the community; and

12          A Mandatory Special Assessment of $100.

13          THE COURT:  Thank you.

14  Q   (By The Court) And, Mr. Fryar, you understand the maximum

15  penalties for these charges in the Superseding Information?

16  A.   Yes.  Yes, sir.

17  Q.   Well, you're looking quizzically at me, so I'm going to give

18  you a chance to visit with Mr. Hoak because I want to make sure

19  you understand the maximum penalties.

20          If you need some privacy, we'll ---

21          (White noise turned on in the courtroom while Defense

22  counsel met with his client.)

23  Q   (By The Court) All right.  I just want to make sure before

24  we go any further.

25  A.   Yes.
```

1    Q.    We're not in any rush.  We're going to make sure we get it

2    right.

3    A.    Thank you, Your Honor.

4    Q.    All right.  So you understand the new charge and the

5    penalties for that new charge.  So let me now explain to you the

6    charge in the Superceding Information is also similar to the

7    charge in the Indictment, a very serious charge.  Our

8    Constitution and specifically the Fifth Amendment to our

9    Constitution guarantees that a person charged with a serious

10   federal crime in this country has the right to have that charge

11   presented first to a Grand Jury.

12        Do you understand that?

13   A.    Yes, sir.

14   Q.    However, a person, like yourself, may waive his right to

15   have the case presented to a Grand Jury and agree -- excuse me --

16   to being charged by this document called a "Superseding

17   Information."  If you do not waive that right to be indicted and

18   the Government wishes to pursue the charge against you, then they

19   must present the case to a Grand Jury and secure an Indictment.

20        Do you understand that?

21   A.    Yes, sir.

22   Q.    A Grand Jury is supposed of at least 16 people but no more

23   than 23, and at least 12 of those people have to find probable

24   cause or a fair probability to believe you've committed the crime

25   or they won't return an indictment.

```
 1          Do you understand that?
 2  A.   Yes, sir.
 3  Q.   Do you also understand that the Government may or may not
 4  get 12 people to agree that you committed the crime charged in
 5  that Superseding Information?
 6  A.   Yes, sir.
 7  Q.   All right.  And you also understand that if you agree to
 8  waive your right to being indicted, this case will proceed today,
 9  including through your plea, just as if you were indicted?
10  A.   Yes, sir.
11  Q.   All right.
12          THE COURT:  I do find that Mr. Fryar has knowingly and
13  voluntarily waived his right to be indicted by a Grand Jury.  The
14  Court will accept the waiver which now brings us to your plea.
15  Q    (By The Court) I want to remind you that you have the right
16  to visit with Mr. Hoak at any time during this hearing if you
17  have any question about anything we're doing.
18          I also want to remind you that you have the right to
19  enter your guilty plea before a United States District Judge, but
20  you may agree to me accepting your plea and making a
21  recommendation to the District Judge.
22          I do see that you previously signed a Consent Form.  I
23  just want to confirm that you still consent to me accepting your
24  plea.
25          Is that correct?
```

1    A.    Yes, sir.

2    Q.    All right.

3          THE COURT:  I find that Mr. Fryar has knowingly and

4    voluntarily consented to the Magistrate Judge conducting these

5    proceedings.

6    Q    (By The Court) Let's start by having you give us your full

7    name for the record.

8    A.    Terrell Charles Fryar.

9    Q.    And, Mr. Fryar, I didn't say this earlier, I don't think,

10   but you understand that now you're under oath, any false

11   information could possibly result in you being charged with

12   perjury or making a false statement?

13   A.    Yes, sir.

14   Q.    All right.  Where were you born?

15   A.    I was born in Big Spring, Texas.

16   Q.    And how old are you now?

17   A.    I'm 54.

18   Q.    Okay.  And in the past 12 months have you been treated for

19   substance abuse of any kind?

20   A.    No, sir.

21   Q.    All right.  In the past 12 months have you been under the

22   care of a healthcare practitioner for any reason, including

23   mental health?

24   A.    My -- I have a regular doctor that I see, yes, sir.

25   Q.    And what kind of medicines are you taking?

9

```
1    A.    I take Trazodone for sleep.

2    Q.    All right.  And are you currently taking that?

3    A.    Yes, sir.

4    Q.    Let me ask you:  Does that affect your ability to think

5    clearly?

6    A.    Not at all.

7    Q.    So today as you sit here, do you feel that you think --

8    you're thinking clearly and you understand why you're here?

9    A.    Yes, sir, absolutely.

10   Q.    All right.  Thank you.

11         THE COURT:  Mr. Hoak, in working wit Mr. Fryar, have

12   you uncovered any reason to doubt his competence to plead?

13         MR. HOAK:  No, sir.

14         THE COURT:  Mr. Tusing, does the Government have any

15   reason to doubt Mr. Fryar's competence?

16         MR. TUSING:  No, Your Honor.

17         THE COURT:  Thank you, both.

18         I do find that Mr. Fryar's competent to understand

19   these proceedings and to enter a knowing and voluntary plea.

20   Q    (By The Court) Mr. Fryar, I'm going to go over some of the

21   rights you're going to be giving up as part of your plea and some

22   of the consequences of being convicted of this charge, so listen

23   carefully.  Again, if you have any questions, let me know.

24         First and foremost, no one can force you to plead

25   "guilty."
```

1    You have the right to demand a trial by a jury on the

2   charges against you.  And if you exercise that right, you would

3   be presumed innocent at that trial, and the burden would be on

4   the Government to establish your guilt beyond a reasonable doubt

5   to each juror who's selected to hear your case.

6    And you'd have the right to help pick that jury with

7   Mr. Hoak and be present and confront the witnesses called to

8   testify against you, have those witnesses cross-examined by

9   Mr. Hoak, and have him object to evidence offered against you and

10  otherwise challenge the Government's case.

11   You would also have the right and power of this Court

12  to compel certain evidence and testimony in your favor.

13   You would have the right to testify at that trial, if

14  you chose to do so, but, more importantly, you would have the

15  right to not testify, and the Government could not use your

16  exercise of that right to suggest to the jury that you're somehow

17  guilty.

18   And even if you were convicted after this trial, you

19  would still have the right to appeal that conviction and any

20  sentence imposed by the District Judge.

21   Now on the other hand, if you go forward today with

22  your decision to plead "guilty" and the District Judge accepts

23  your plea, he will adjudge you guilty based solely on the

24  strength of your plea, not based on any evidence considered by a

25  jury or any trial.

1     Do you understand that?

2   A.   Yes, sir.

3   Q.   You also understand that while I just reminded you of your

4   right to silence, clearly if you plead "guilty," you'll have to

5   waive that with regard to the charge you're admitting.

6     Do you understand that?

7   A.   Yes, sir.

8   Q.   And lastly, this being a felony offense, a conviction likely

9   means there's going to be restrictions on your -- some of your

10  civil rights at least for a time, including your right to vote,

11  to hold public office, to serve on a jury and to possess a

12  firearm.

13    Do you understand that?

14  A.   Yes, sir.

15  Q.   All right.  Now having discussed those issues with you, do

16  you still believe it's in your best interest to plead "guilty"?

17  A.   Yes, sir, I do.

18  Q.   Thank you, Mr. Fryar.

19    I'm going to go over a couple of documents with you.

20  There's a Plea Agreement, a Plea Agreement Supplement and a

21  Factual Resume.  Each of these appears to bear your signature.

22    Do you recall signing those?

23  A.   Yes, sir, I do.

24  Q.   And prior to signing them, did you read each of them

25  carefully and discuss them thoroughly with your attorney?

1   A.   Yes, sir, I did.

2   Q.   And did you understand everything in those documents before

3   signing them?

4   A.   Yes, sir, I believe so.

5   Q.   Thank you.

6        I'm going to go over a couple of paragraphs, and then I'm

7   going to stop and give you a chance to ask any questions you may

8   have.

9        Paragraph 1 goes over the rights we've already discussed.

10       Paragraph 2 recites that you're pleading to Count One of the

11  Superseding Information, Possession with Intent to Distribute

12  Methamphetamine.

13       And Paragraph 3 goes over the maximum penalties which

14  Mr. Tusing has already read to us at the beginning of this

15  hearing.

16       Do you wish to go over those again?

17  A.   No, sir.

18  Q.   You understand them?

19  A.   Yes, sir.

20  Q.   And you have them in front of you, correct?

21  A.   Yes, sir, I do.

22  Q.   All right.  And you understand if you plead "guilty" today

23  and the District Judge accepts your plea, you'll be subject to

24  these penalties up to the maximum?

25  A.   Yes, sir.

1  Q.   All right.  You understand in the federal system there's no

2  parole.  So if you're sentenced to prison, you will not be

3  released on parole.

4  A.   Yes, sir.

5  Q.   Okay.  Paragraph 5 discusses the *United States Sentencing*

6  *Guidelines*, and let me just go over that with you a little bit.

7       MR. TUSING:  Your Honor, I'm sorry to interrupt.  I

8  think Paragraph 5 covers the (c)(1)(C) we have in this case.

9       THE COURT:  You're correct.  Yes.

10 Q    (By The Court) I will still go over the *Sentencing*

11 *Guidelines* because they're still relevant even with a (c)(1)(C)

12 because the District Judge may not accept the (c)(1)(C) and then

13 you may want to go forward without the (c)(1)(C) in which case

14 the *Guidelines* will become very relevant.

15      And they're also relevant because you only have a

16 (c)(1)(C) with regard to your term of imprisonment and there are

17 other aspects to sentencing that you don't have a (c)(1)(C) on,

18 like the fine or the penalty or the terms of your supervised

19 release, for instance.

20 A.   Yes.

21 Q.   So I'm going to go over the -- the *Guidelines* just so you'll

22 understand the backdrop to all of this.  All right?

23 A.   Thank you.

24 Q.   So the *Guidelines* are non-binding guidelines issued to

25 District Judges to guide them in arriving at the appropriate

1    sentence in federal criminal cases.  They are -- The judge will

2    consider those in sentencing a criminal defendant along with any

3    authorized departures or variances, upward or downward, from

4    those guidelines, and there's some additional statutory

5    sentencing factors that they also take into consideration.

6        But a District Judge will not be able to determine a

7    defendant's guideline sentence until after a PSR or Presentence

8    Report has been prepared by the probation officer assigned to

9    your case.

10       And to prepare that report, the probation officer will

11   interview you and the Government about the facts of your case.

12   And I know you've agreed to this set of facts in the Factual

13   Resume, which we'll get to next, but you need to understand that

14   the District Judge is not bound by that set of facts and in

15   sentencing you, he may find facts that aren't in that -- rely on

16   facts that aren't in that Factual Resume and disregard facts that

17   are.

18       Do you understand that?

19   A.   Yes, sir.

20   Q.   You'll have an opportunity, of course, to object to the

21   recommendations and findings in the PSR.

22       Now if -- As Mr. Tusing alluded, if the District Judge

23   accepts your 11(c)(1)(C) agreement for 188 months, that will be

24   your sentence, correct?  Do you understand that?

25   A.   Yes, sir.

1    Q.   All right.  As I mentioned, ---

2             THE COURT:  Mr. Tusing, it appears there are no other

3    agreements as to sentencing.

4             MR. TUSING:  Yes, Your Honor.  That's right.

5             THE COURT:  All right.

6    Q    (By The Court) So you understand that there's no agreement

7    as to the term of supervised release he can impose after that

8    term of imprisonment.

9    A.   Yes, sir.

10   Q.   You also understand that if the District Judge rejects that

11   11(c)(1)(C) agreement, you will have an opportunity to reconsider

12   your plea and withdraw it.

13        You will also have the opportunity to go forward with your

14   plea, knowing that the District Judge is not bound by that

15   agreement.

16        Do you understand that?

17   A.   Yes, sir.

18   Q.   And in that case, that's where the *Guidelines* become very

19   important because, again, the District Judge will determine your

20   guideline sentence based upon consideration of the guideline

21   factors, of course, and the other statutory sentencing factors.

22        Do you understand that?

23   A.   Yes, sir.

24   Q.   Now if that happens, he rejects the Plea Agreement and you

25   want to go forward anyway, you understand that so long as your

1    sentence is within the maximum amount of punishment allowed by

2    the statute we've gone over, even if it's higher than you thought

3    it would be or higher than your attorney may have estimated for

4    you, you won't be allowed to withdraw your plea at that time?

5    A.    Yes, sir.

6    Q.    All right.  One last thing on the (c)(1)(C) agreement.  When

7    a defendant enters one of those, I always recommend to the

8    District Judge that the District Judge reserve judgment on

9    whether to accept your plea until after the PSR has been prepared

10   and the parties have had an opportunity to object to the

11   recommendations and findings in the PSR and have a sentencing

12   hearing.  So in other words, the judge, if he follows that

13   recommendation, will wait to accept -- to make a decision on the

14   11(c)(1)(C) agreement until sentencing.

15         Do you understand that?

16   A.    Yes, sir.

17   Q.    All right.  The U.S. Attorney's Office in Paragraph 9 is

18   agreeing to not bring any additional charges against you based on

19   the conduct you're admitting.

20         They're also agreeing to dismiss, after sentencing, any

21   remaining charges.

22         If for any reason the District Judge rejects that part of

23   the agreement, Mr. Fryar, you would have an opportunity to

24   reconsider your plea and withdraw it.

25         In Paragraph 12 you're waiving your right to appeal with

1  some exceptions as noted there in Paragraph 12.  Those exceptions

2  are, you know, if the judge exceeds the statutory range of

3  punishment or there's some other mathematical error in

4  calculating your sentence or you claim your plea today or your

5  waiver of your appellate rights was not voluntary or your counsel

6  was ineffective in assisting you.  But other than that, you're

7  giving up your right to appeal today.

8       Do you understand that?

9  A.   Yes, sir.

10 Q.   And you've carefully discussed that waiver with your

11 attorney?

12 A.   Yes, sir.

13 Q.   And you are giving that up of your own free will?

14 A.   Yes, sir.

15 Q.   All right.  Paragraph 13 tells me you have gone through this

16 Plea Agreement with Mr. Hoak and he's explained each paragraph to

17 you and how it affects your rights.

18      Is that correct?

19 A.   Yes.

20 Q.   And have you been fully satisfied with his representation of

21 you in this case?

22 A.   Yes, sir.

23 Q.   Let me stop there, Mr. Fryar, and ask you if you have any

24 question about your Plea Agreement, whether I've gone over it or

25 not?

```
 1   A.   No, sir.

 2            THE COURT:  And, Mr. Hoak, are there any provisions you

 3   wish me to discuss that I haven't?

 4            MR. HOAK:  No, sir.

 5            THE COURT:  Mr. Tusing?

 6            MR. TUSING:  No, Your Honor.

 7            THE COURT:  All right.

 8   Q    (By The Court) I do find, Mr. Fryar, that your Plea

 9   Agreement and Plea Agreement Supplement are both in proper form

10   which brings us to the details of the charge.  And for that, we

11   will return to the Factual Resume.

12            As Mr. Hoak has probably explained to you, each federal

13   crime has a certain set of facts that must be proven beyond a

14   reasonable doubt to support a conviction, including through a

15   plea such as this, and those are called the "essential elements"

16   of the offense, and those appear on Page 1 of your Factual

17   Resume.

18            Mr. Tusing is going to go over these with us now and

19   then I'll have some questions when he's finished.

20            MR. TUSING:  The three essential elements to the

21   offense include that:

22            First, you knowingly possessed a controlled substance;

23            Second, that substance was, in fact, methamphetamine;

24   and

25            Third, that when you possessed the substance, you
```

1    possessed it with an intent to distribute it.

2          THE COURT:  Thank you, Mr. Tusing.

3    Q    (By The Court) And, Mr. Fryar, you've carefully discussed

4    those three essential elements with Mr. Hoak.

5          Is that correct?

6    A.   Yes, sir.

7    Q.   And do you today feel that you understand each of those

8    essential elements of the crime you intend to admit?

9    A.   Yes, sir.

10   Q.   All right.  Now I want you to keep in mind the 11(c)(1)(C)

11   agreement you have and the fact that you do not have an agreement

12   as to any other aspect of sentencing.

13         And with that in mind, I'm going to ask you whether you

14   admit today that you committed each of these three essential

15   elements?

16   A.   Yes, sir.

17   Q.   All right.  There's some additional facts in the Factual

18   Resume we haven't gone over, but do you agree they're true as

19   well?

20   A.   Yes, sir.

21   Q.   All right.  Thank you, Mr. Fryar.

22         And now let me just ask you one final series of questions.

23   But before I do, do you wish to -- do you have any question about

24   anything we've done or wish to visit with your lawyer before

25   entering your plea?

1    A.    No, sir.  Thank you.

2    Q.    All right.  Your plea must be purely voluntary, so I need to

3    ask you whether anyone has made any promises to you in exchange

4    for your plea other than the promises made by the U.S. Attorney's

5    Office through this Plea Agreement?

6    A.    No, sir.

7    Q.    Has anyone threatened you or otherwise tried to force you to

8    plead "guilty"?

9    A.    No, sir.

10   Q.    And, Mr. Fryar, are you pleading "guilty" today because you

11   are, in fact, guilty and for no other reason?

12   A.    Yes, sir.

13   Q.    And, sir, are you doing that of your own free will?

14   A.    Yes, sir.

15   Q.    Mr. Fryar, how now do you plead to Count One of the

16   Superseding Information?  Guilty or not guilty?

17   A.    Guilty.

18         THE COURT:  All right.  Being satisfied with the

19   responses given during this hearing, the Court makes the

20   following findings:

21         Mr. Terrell Charles Fryar is fully competent and

22   capable of entering an informed plea.  His plea of "guilty" to

23   Count One of the Superseding Information is a knowing and

24   voluntary plea supported by an independent basis in fact that

25   satisfies each of the essential elements of the offense charged

1    and to which he is pleading "guilty."

2              And since he has acknowledged his guilt as charged in

3    Count One of the Superseding Information in open court, I've

4    signed a report directed to the District Judge recommending that

5    he accept your plea.

6              You and Mr. Hoak will have 14 days from today to file

7    any objections to my report or they may be waived.

8              What will happen next is the District Judge is going to

9    order this PSR.  So the probation officer will make contact with

10   you, and it's in your best interest to cooperate in providing

11   information for that report because it's a very important piece

12   of information the judge relies on.

13             All right?

14             Mr. Tusing, anything further in Mr. Fryar's case?

15             MR. TUSING:  Nothing further, Your Honor.

16             THE COURT:  Mr. Hoak?

17             MR. HOAK:  No, sir.

18             THE COURT:  All right.  Mr. Fryar, you'll remain in

19   custody pending sentencing, and we are adjourned.  Thank you,

20   sir.

21             THE DEFENDANT:  Thank you.

22             MR. HOAK:  Permission to be excused, Your Honor?

23             THE COURT:  Thank you, Mr. Hoak.

24             (Hearing adjourned at 11:05 AM.)

25

CERTIFICATE OF OFFICIAL REPORTER

      I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Texas, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the electronically-recorded proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

      Dated this 26th day of June, 2024.


/s/ Deborah A. Kriegshauser
_____
DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER