```
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF TEXAS
 2                        ABILENE DIVISION

 3   UNITED STATES OF AMERICA,      )
              Government,           )
 4                                  )
     VS.                            )   CAUSE NO. 1:23-CR-020-H-1
 5                                  )
     TERRELL CHARLES FRYAR,         )
 6            Defendant.            )

 7

 8        ------------------------------------------------

 9                       SENTENCING HEARING
          BEFORE THE HONORABLE JAMES WESLEY HENDRIX,
10                 UNITED STATES DISTRICT JUDGE

11                       APRIL 18, 2024
                         LUBBOCK, TEXAS
12
          ------------------------------------------------
13

14                    A P P E A R A N C E S

15   FOR THE GOVERNMENT:
     UNITED STATES ATTORNEY'S OFFICE
16   1205 TEXAS AVENUE, SUITE 700
     LUBBOCK, TEXAS 79401
17   BY:  JEFFREY R. HAAG

18

19   FOR THE DEFENDANT:
     LAW OFFICE OF MARK A. HOAK
     ATTORNEYS AT LAW
20   1307-B WEST ABRAMS STREET, SUITE 211
     ARLINGTON, TEXAS 76013
21   BY:  MARK A. HOAK

22

23   FEDERAL OFFICIAL COURT REPORTER: MECHELLE DANIEL, 1205 TEXAS
     AVENUE, LUBBOCK, TEXAS 79401, (806) 744-7667.
24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT
25   PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

1                                  <u>INDEX</u>

2

3    DEFENDANT'S ALLOCUTION.................................    10

4    GOVERNMENT'S SENTENCING EVIDENCE/ARGUMENT..............    11

5    SENTENCING FACTORS....................................    12

6    SENTENCE BY THE COURT.................................    15

7    RIGHT TO APPEAL.......................................    19

8    REPORTER'S CERTIFICATE................................    22

9

10

11

12

13

14

15                            *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S
 2              THE COURT:  The Court calls the next case on the
 3   docket, United States vs. Terrell Charles Fryar, 1:23-CR-020-1.
 4              Who is here on behalf of the defendant?
 5              MR. HOAK:  Mark Hoak, Your Honor.
 6              THE COURT:  Good morning, Mr. Hoak.
 7              For the United States?
 8              MR. HAAG:  Jeffrey Haag on behalf of the
 9   United States.  Ready to proceed, Your Honor.
10              THE COURT:  Thank you, Mr. Haag.
11              Mr. Fryar, good morning.
12              THE DEFENDANT:  Good morning.
13              THE COURT:  Would you please tell me your full
14   name, sir.
15              THE DEFENDANT:  Terrell Charles Fryar.
16              THE COURT:  Thank you, Mr. Fryar.
17              This hearing follows the defendant's guilty plea
18   and request that the Court accept the plea agreement.  That
19   plea agreement contains a Rule 11(c)(1)(C) agreement for a
20   sentence that would not be able to exceed 188 months, or
21   approximately a little over 15 and a half years.
22              Mr. Fryar, you previously appeared before
23   Magistrate Judge Parker back in late September.  You entered a
24   plea of guilty to Count 1 of the superseding information that
25   charged you with distribution and possession with intent to
```

1    distribute methamphetamine.

2            Judge Parker found that your guilty plea was

3    knowing and voluntary and supported by a sufficient factual

4    basis, so he recommended that I accept the guilty plea.  And I

5    did do that.  I did reserve judgment on whether to accept the

6    plea agreement.  On October 17th, I entered an order accepting

7    your guilty plea, and I did adjudge you guilty of the crime

8    alleged in the superseding information.

9            The statutory sentencing range here, sir, or the

10   total possible range of punishment, is a term of imprisonment

11   of not more than 20 years; a fine of $1 million, or both; and a

12   period of supervised release of at least 3 years, and up to

13   life.

14           I inform the parties that I intend to deny Docket

15   Number 72.  Docket Number 72 is simply just not justified in

16   light of everything that's before me.

17           So by my calculations--and then I'll hear the

18   parties out on this if they'd like to be heard.  But by my

19   calculations, the advisory guideline range typically would be

20   235 to 293 months' imprisonment.  But because the statutory

21   maximum here is 240 months, the advisory guideline range

22   becomes 235 to 240 months' imprisonment.

23           But if I were to accept your plea agreement, I

24   would be required to impose a sentence of no greater than

25   188 months, which represents about a 20-percent reduction from

1    that advisory guideline range.

2          I do have concerns about the (c)(1)(C) agreement.

3    I am required by statute to impose a sentence that is

4    sufficient, but not greater than necessary, to comply with the

5    purposes of sentencing set forth in Section 3553(a)(2), and to

6    consider all the sentencing factors in that statute, which I

7    have and will do.

8          In particular, the sentence must reflect the

9    seriousness of the offense; it has to promote respect for the

10   law, provide a just punishment, afford adequate deterrence, and

11   protect the public.

12         Would the parties like to be heard before I make my

13   final decision on whether to accept or reject the plea

14   agreement?  Mr. Haag?

15         MR. HAAG:  Your Honor, we believe we have fully

16   briefed the reasons for the Rule 11(c)(1)(C) agreement in

17   Documents 65 and 72, and we just rely on that argument.

18         THE COURT:  Okay.  And I have read those and will

19   consider them.

20         Mr. Hoak?

21         MR. HOAK:  We join in with the government.  No

22   argument on that point, Judge.

23         THE COURT:  All right.  Thank you, Mr. Hoak.

24         The Court concludes and finds that the capped

25   188-month sentence that would be required by the plea agreement

1    would not be sufficient to capture the 3553(a) factors.  The

2    offense here is serious and significant.  The evidence I have

3    before me regarding your conduct while on pretrial detention is

4    also particularly concerning.

5             Regarding the offense, officers conducted multiple

6    controlled buys of methamphetamine from you, and they

7    discovered nearly 2 kilograms of methamphetamine (actual) in

8    your vehicle during the traffic stop.  That conduct comes after

9    a prior federal conviction and sentence for conspiracy to

10   manufacture methamphetamine, and for that prior federal

11   conviction, you were originally sentenced to 151 months'

12   imprisonment.

13            I wish that sentence had deterred you from

14   additional criminal conduct.  It obviously didn't.  It was

15   insufficient to deter you.

16            And I am, again, particularly concerned with your

17   conduct while incarcerated for this offense; in particular, the

18   evidence related to your interactions with C.G.  The brazenness

19   of those actions continuing while you are awaiting federal

20   sentencing demonstrates your dangerousness to the community and

21   the need to further deter you and protect the public.

22            Finally, the bottom end of your advisory guideline

23   range, by my calculations anyway, is 235 months, which is

24   significantly above the top of the sentence that I can impose

25   under the (c)(1)(C) agreement.  I do recognize the

1    circumstances pointed out by the United States in those

2    documents that were referenced, but I do not find that there is

3    substantially mitigating circumstances here or circumstances to

4    justify the plea agreement in light of everything that I have

5    before me.

6              So after careful review, I inform the parties that

7    the plea agreement is rejected.  It would not adequately or

8    reasonably capture all of the 3553(a) sentencing factors.  A

9    sentence of up to 15 and a half years would be a downward

10   departure or variance from the guidelines, and I find that it

11   would be unreasonable under the circumstances.

12             All right.  So, Mr. Fryar, thank you for your

13   patience with that.  I'm required to explain that to all of

14   you.  I now need to tell you some of your rights under the

15   rules that we use here.

16             You do have the right to withdraw your guilty plea

17   because I have rejected your plea agreement.  So I inform you

18   that, because I have just rejected your plea agreement, I'm not

19   required to follow it, so I can dispose of your case less

20   favorably than the plea agreement contemplated.

21             Now, Mr. Hoak, how does your client intend to

22   proceed today?  Does he plan to withdraw his plea of guilty?

23             MR. HOAK:  We intend to proceed, Your Honor.

24             THE COURT:  All right.  Mr. Fryar, is that right?

25   Do you plan to proceed with your plea of guilty?

```
1                    THE DEFENDANT:  Yes, sir.

2                    THE COURT:  Okay.  Is anybody making you do that or

3     forcing you into that decision?

4                    THE DEFENDANT:  No, sir.

5                    THE COURT:  All right.  Typically, because the

6     defendant has not withdrawn a guilty plea, I would issue a new

7     order setting sentencing.  But I've been informed that the

8     parties wish to proceed with sentencing today.

9                    Is that right, Mr. Hoak?

10                   MR. HOAK:  Yes, sir.

11                   THE COURT:  Is that right, Mr. Haag?

12                   MR. HAAG:  Yes, Your Honor.

13                   THE COURT:  Okay.  All right.  Then the Court will

14    proceed with sentencing today.

15                   All right.  Mr. Hoak, have you had an opportunity

16    to read the presentence report and discuss it with your client?

17                   MR. HOAK:  Yes, sir.

18                   THE COURT:  Mr. Fryar, is that right?  Have you had

19    an opportunity to read your presentence report and discuss it

20    with your attorney?

21                   THE DEFENDANT:  Yes, sir.

22                   THE COURT:  You understand that we're here so the

23    Court can decide what sentence to impose?

24                   THE DEFENDANT:  Yes, sir.

25                   THE COURT:  All right.  Mr. Hoak, do you have any
```

```
 1    objections to the presentence report?
 2              MR. HOAK:  No, sir.  No, sir.
 3              THE COURT:  All right.  Any objections from the
 4    United States?
 5              MR. HAAG:  No, Your Honor.
 6              THE COURT:  Okay.  I understand that the parties
 7    are asking the Court to use the lower drug amount of
 8    2,033.95 grams of methamphetamine (actual).
 9              Is that right, Mr. Hoak?
10              MR. HOAK:  That's correct.
11              THE COURT:  That's correct, Mr. Haag?
12              MR. HAAG:  That is correct, Your Honor.
13              THE COURT:  All right.  The Court will do that.  I
14    think that's a reasonable request.  Initially, the government
15    believed that that lower amount would result in an advisory
16    guideline range of 32, but a new acceptance was filed by the
17    United States recognizing that this is methamphetamine
18    (actual), not a mixture containing methamphetamine, and so the
19    PSR correctly has the offense level at 36, with an advisory
20    guideline range of 235 to 240 months.
21              Is that right, Mr. Haag?
22              MR. HAAG:  That is correct, Your Honor.
23              THE COURT:  Is that correct, Mr. Hoak?
24              MR. HOAK:  Yes, sir.
25              THE COURT:  Okay.  All right.  Well, hearing no
```

 1  objections, the Court adopts the PSR's factual findings and

 2  legal conclusions as my own.

 3          The statutory sentencing range, or the total

 4  possible range of punishment here, Mr. Fryar, is a term of

 5  imprisonment of not more than 20 years; a fine of $1 million,

 6  or both; and a period of supervised release of at least

 7  3 years, and up to life.

 8          Under the guidelines manual, we have a total

 9  offense level of 35; your criminal history category is IV.  And

10  again, typically, that would be a sentencing--advisory

11  sentencing range of 235 to 293, but we're capped at 240, so

12  your advisory range becomes 235 to 240.

13          Again, I am denying Docket Number 72.

14          Mr. Hoak, I'd be glad to hear any evidence or

15  argument you have on behalf of your client.

16          MR. HOAK:  We have none.

17          THE COURT:  All right.  Mr. Fryar, I have reviewed

18  all these materials.  I'm familiar with this case.  I know it's

19  the first time you and I are seeing each other, but I am ready

20  to proceed.

21          You do have the right to tell me anything you would

22  like to tell me.  You don't have to say anything, and I won't

23  hold it against you if you don't.

24          Is there anything you'd like to say, sir?

25          THE DEFENDANT:  Yeah.  I'm really nervous, but--

```
 1                THE COURT:  Take your time.
 2                THE DEFENDANT:  I just want the Court to know
 3      that--  Excuse me.  I'm sorry.  I'm sorry.
 4                My--  I don't know.  I don't know.  I'm just--I'm
 5      really ashamed of myself for being here.  When I was released
 6      from prison last time, I had really began to build a good life.
 7      And there was some counseling and things that I got while I was
 8      at Lexington.  I could really understand my addiction for the
 9      first time in my life.  And I really built a good life when I
10      got out.  I really did.  I had a chance, and--  I'm so sorry.
11                Some traumatic things happened, and it led me back
12      into my addiction, and I couldn't find my way out.  And--and--I
13      mean, it's my fault.  I was too weak to get out of it.  And I
14      should have found a way out and I just couldn't do it, and my
15      addiction got the best of me and led me back here.  And I just
16      hope that I have time to build my life back again.
17                THE COURT:  All right.  Thank you, sir.  I
18      appreciate that statement, and I will take it into account.
19                All right.  Mr. Haag?
20                MR. HAAG:  Yes, Your Honor.
21                Your Honor, we would ask that the Court dismiss the
22      indictment in this case and proceed to sentencing on Count 1 of
23      the superseding information.
24                THE COURT:  That's granted.
25                MR. HAAG:  Yes, Your Honor.
```

1           And I make this argument fully understanding the

2     Court has rejected the (c)(1)(C).  But we still do persist in

3     our recommendation for a sentence not to exceed 188 months for

4     the reasons that are set forth in Documents 65 and 72, and we

5     continue with that recommendation, Your Honor.

6           THE COURT:  In essence--again, not to reveal any

7     information in those documents, but, in essence, you made a

8     deal; you're sticking by it regardless of new facts and

9     circumstances that came to light after you made that deal?

10          MR. HAAG:  That's correct, Your Honor.  The

11    government's opinion is that we make a deal and we stand by

12    that deal no matter what happens.  And sometimes we make a deal

13    and we find out things later, but again, that's sort of the

14    risk that you run and the risk you assume when you make a deal.

15    Sometimes those things turn out well; sometimes they don't.

16    But we still believe that, based upon everything that's in

17    those two documents, a sentence not to exceed 188 months is

18    appropriate.

19          THE COURT:  Okay.  Thank you, Mr. Haag.

20          Mr. Haag, do you know any reason why the Court

21    cannot lawfully impose sentence at this time?

22          MR. HAAG:  No, Your Honor.

23          THE COURT:  Mr. Hoak?

24          MR. HOAK:  No, sir.

25          THE COURT:  I am required by statute to impose a

1    sentence that is sufficient, but not greater than necessary, to

2    comply with the purposes of sentencing set forth in

3    Section 3553(a)(2), and to consider all of the sentencing

4    factors listed in that statute, which I have done.

5                I've considered here the nature and circumstances

6    of your offense.  And in 2022, investigators used a

7    confidential informant to conduct a controlled buy from you at

8    your residence on two occasions.  For the first buy, the

9    informant obtained 83.65 grams of methamphetamine (actual) in

10   exchange for $1200.  The second buy, you sold a little over

11   108 grams of methamphetamine (actual).

12               After those buys, investigators obtained a court

13   order eventually authorizing the installation of a tracking

14   device on your vehicle after they learned that you would

15   frequently travel from Big Spring to Fort Worth to obtain

16   methamphetamine.  Officers conducted a traffic stop eventually

17   on your vehicle and they discovered two gallon-sized bags

18   containing 1,842 grams of methamphetamine (actual), along with

19   a little over $3,000 in cash.

20               You admitted that you had provided a supplier

21   $12,000 in exchange for the 2 kilograms of methamphetamine and

22   had bought--and you sought, pardon me, to buy Percocet pills

23   with the cash found in the vehicle.

24               That is a serious offense to say the least.  And

25   that much methamphetamine, that amount, is particularly

1   concerning.

2               THE DEFENDANT:  Yes, sir.

3               THE COURT:  The type of narcotic here is

4   particularly addictive and destructive.

5               It's especially concerning in light of another

6   factor that I consider, which is your history and your

7   characteristics.  This is not the first time you've been

8   involved with methamphetamine.  It's not the first time you've

9   been convicted of a federal methamphetamine distribution-type

10  offense.

11              In 2007, you were convicted of conspiracy to

12  manufacture 50 grams or more of methamphetamine and possession

13  of pseudoephedrine.  That was in the Midland Division of the

14  Western District of Texas.  And initially, you received

15  151 months, so a significant sentence in that case.  You get

16  out in 2016 on supervised release, and supervised release does

17  expire.

18              Prior convictions also include escape while

19  arrested or confined, possession of a controlled substance, and

20  failure to report an injury/accident at once.

21              It is--  I understand why you would be embarrassed

22  to be here today.  There were a lot of resources provided to

23  you, like you mentioned, and we certainly hoped for better.

24  Unfortunately, you were either unwilling or incapable of

25  avoiding this kind of behavior, and this is very serious

1  behavior, and I can't ignore your repeat criminal conduct, nor

2  can I ignore your conduct after being incarcerated in this

3  case.  I won't go into detail on the record, but your conduct

4  while incarcerated just demonstrates a complete disregard for

5  the law, an incredible danger to society, on top of this

6  already very concerning set of circumstances.

7          And I did consider the need and I do consider the

8  need to impose a sentence that does reflect the seriousness of

9  your offense.

10          I have to promote respect for the law, and at this

11  point, you have shown little, if any, respect for the law.

12          I have to give a just punishment, afford adequate

13  deterrence, and protect the public.

14          All of those factors weigh heavily here.  So, after

15  considering those factors, the purposes of sentencing, and the

16  parties' arguments, I have determined that a sentence of

17  240 months is sufficient, but not greater than necessary.

18          I believe that the guideline calculations announced

19  today were correct, but, to the extent they were incorrectly

20  calculated, I would have imposed the same sentence without

21  regard to that range, and I would have done so for the same

22  reasons, in light of the 3553(a) factors.

23          Upon release, you're going to be on supervised

24  release for a term of 3 years.  While on release, you shall

25  comply with your mandatory conditions of release listed in your

```
 1    presentence report and in Section 3583(d).
 2              Mr. Hoak, can you confirm that you and your client
 3    received and discussed my written notice of intent to impose
 4    the standard and special conditions?
 5              MR. HOAK:  I believe so, Your Honor, yes.  Yes.
 6              THE COURT:  You did?
 7              You did review those with your client?
 8              MR. HOAK:  I believe--
 9              THE DEFENDANT:  I believe so.
10              Can I ask--
11              THE COURT:  Give me one second.  We'll take it one
12    thing at a time.
13              Mr. Hoak, did you file back the copy of the notice
14    on the docket?
15              MR. HOAK:  Yeah, I believe we did, Your Honor.
16              THE COURT:  Okay.  Well, then, we'll check.  Give
17    me one second.
18         (PAUSE)
19              THE COURT:  No, you did not.  Okay.  Mr. Hoak, you
20    can approach.  I'm going to hand you the original.  Why don't
21    you and your client have a seat at counsel table.  You can
22    review that document.  Your client can ask you a question.  Let
23    me know when you are complete.
24              THE DEFENDANT:  Can I say something real quick?
25              THE COURT:  Talk to your lawyer and then he can
```

```
 1     speak to me.

 2          (MR. HOAK AND DEFENDANT CONFERRING PRIVATELY)

 3               THE COURT:  Okay, Mr. Hoak.  Can you now confirm

 4     that you and your client received and discussed my written

 5     notice of intent to impose the standard and special conditions?

 6               MR. HOAK:  Yes, sir.

 7               THE COURT:  Okay.  All right.  Do you have any

 8     objections to those?

 9               MR. HOAK:  No, sir.

10               THE COURT:  Hearing no objections, they are adopted

11     today.  They will be included in my judgment.  I find that they

12     are reasonable and they relate to all of the appropriate

13     statutory considerations, and they impose no greater

14     deprivation of liberty than reasonably necessary under the

15     statute.

16               Mr. Hoak, was there something else that you needed

17     to raise from your client?

18               MR. HOAK:  Just we would ask the Court to consider

19     placement in the Lexington facility--federal facility.  That's

20     where the defendant had resided before and said he got some

21     exceptional counseling.  So if the Court could recommend that,

22     we would appreciate it.

23               THE COURT:  Is that in Kentucky?

24               THE DEFENDANT:  Yes, sir.

25               MR. HOAK:  Yes.
```

```
 1                THE COURT:  Okay.

 2                THE DEFENDANT:  And it also--it also keeps me away

 3     from any of the people that I've been involved in as far as the

 4     life that I've been involved in.  It allows me to get away from

 5     that and that influence.

 6                THE COURT:  All right.  I will make a nonbinding

 7     placement recommendation for FCI Lexington.  I am going to add,

 8     or--  Give me one second.

 9          (PAUSE)

10                THE COURT:  I'll make a nonbinding placement

11     recommendation for FCI Lexington or an appropriate BOP facility

12     not in or near Louisiana.

13                Okay--

14                MR. HOAK:  Judge, one final matter--thing I'd like

15     to address.  Apparently Mr. Fryar was in state custody prior to

16     the federal warrant going out, and I believe that was about a

17     year, but we would ask the Court to consider that in federal

18     time served.

19                THE COURT:  Well, I did consider his history and

20     circumstances in fashioning this sentence.  I'm not authorized

21     to credit anything.  That's for the Bureau of Prisons to do.

22     That's outside of my purview.  I did consider all of his

23     criminal history in fashioning this sentence, so that is

24     rejected.

25                I've been informed that FCI Lexington is a medical
```

```
1    facility, Mr. Hoak.  Give me one second.

2        (PAUSE)

3            THE COURT:  Okay.  It will be FCI Lexington, if

4    appropriate--FMC, pardon me--if appropriate, or an appropriate

5    BOP facility not in or near Louisiana.

6            I'm waiving a fine.

7            You must, however, pay the mandatory special

8    assessment of $100.  That's due and payable immediately.

9            I will recommend that, while incarcerated, you

10   receive appropriate substance abuse and mental health

11   treatment, but I did not lengthen your term of imprisonment to

12   promote rehabilitation.

13           You do have the right to appeal your conviction and

14   your sentence.  If you'd like to appeal, you need to file a

15   notice of appeal within 14 days of today in this court.  If you

16   want to do that, just tell your attorney.  He's very familiar

17   with that process, and he can get that done for you.

18           Mr. Hoak, you are retained in this case.  Right?

19           MR. HOAK:  That's correct, Your Honor.

20           THE COURT:  Although your counsel is retained, if

21   appropriate, he can ask that the costs of the appeal go to the

22   United States, and not to you.

23           Do you understand those appellate rights, sir?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Okay.  All right.  Mr. Hoak, anything
```

1   further from the defense?

2          MR. HOAK:  No.  Well, one matter, Judge.  And your

3   court personnel told me the answer, but I'm going to go ahead

4   and request it anyway.  I--

5          THE COURT:  If she told you the answer, it's the

6   right answer.

7          MR. HOAK:  Well, she told me what you usually like

8   to do, Judge.  I'd like to have the Court enter an order that I

9   be permitted to withdraw from this matter.

10          THE COURT:  How many years have you been

11   practicing?

12          MR. HOAK:  Quite a few, Judge, and this is about

13   the last one.

14          THE COURT:  Well, then, you, of all people, should

15   know that the courtroom deputy is the most powerful person in

16   the room.  And if she said that the Court doesn't provide those

17   kinds of forms and that we don't do that for you and that

18   you're supposed to file a motion, then that's right.

19          I can confirm, although I have an Article III

20   commission, I still believe that she knows more than me and is

21   more powerful than I am.  That's the person you should be most

22   kind to and most gentle to and most understanding of.

23          So she was right.  We're not going to do that.  You

24   can file a motion if you think that it's appropriate.  I'm not

25   going to issue a sua sponte order, and we don't hand forms out

```
 1   to lawyers.  I'm sure you can understand that we're not
 2   permitted to advise people on how to practice law.
 3              MR. HOAK:  I understand.
 4              THE COURT:  There are just certain boundaries that
 5   we have to follow.
 6              So if you would like to withdraw, I'd be glad to
 7   consider that motion.  Don't get me wrong.  Just file that
 8   motion.  I would advise you, anyway, that most attorneys, when
 9   they'd like to withdraw, most of them file a notice of an
10   appeal for their client just out of an abundance of caution.
11   There's some really good defense lawyers behind you.  They can
12   give you some advice if you need it.
13              Anything else, sir?
14              MR. HOAK:  No, sir.
15              THE COURT:  All right.  Mr. Haag, anything else
16   from the United States?
17              MR. HAAG:  No, Your Honor.  Thank you.
18              THE COURT:  All right.  Mr. Fryar, at this time,
19   you are remanded to the custody of the United States Marshal,
20   and I do wish you good luck, sir.
21        (END OF HEARING)
22
23
24
25
```

1       I, Mechelle Daniel, Federal Official Court Reporter in and for the United States District Court for the Northern District

2 of Texas, do hereby certify pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and

3 correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page

4 format is in conformance with the regulations of the Judicial Conference of the United States.

5

6   _/s/ Mechelle Daniel_       **DATE**  JULY 12, 2024

7 MECHELLE DANIEL, CSR #3549
FEDERAL OFFICIAL COURT REPORTER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25